JAMES A. SCRYMSER et al.

*v.*

SEABRIGHT ELECTRIC LIGHT COMPANY.

[Decided October 6th, 1908.]

1. An electric light station, with the necessary incidents attending its operation, is a factory, within a restrictive building covenant.

2. Under a restrictive covenant, pursuant to a general building scheme in a residential district, excluding factories, no distinction can be drawn between manufacturing businesses in existence when the scheme was adopted and those thereafter coming into existence.

3. If any special and restricted use of an electric light plant would alter its character as a factory, within a restrictive building covenant, the burden was on the light company to prove it.

On final hearing on bill, answer and proofs.

*Mr. John W. Slocum* and *Mr. Frank P. McDermott,* for the complainants.

*Mr. Edmund Wilson,* for the defendant.

STEVENSON, V. C.

This cause which long ago, I understand, ceased to contain anything of practical importance to the parties, in view of the removal of the electric light plant of the defendant company from the Monmouth Beach property, may be very briefly disposed of.

1. The complainants when the bill was filed were entitled to an injunction restraining the defendant company from continuing the common law nuisance, the existence of which, in my judgment, was fully proved. Before the defendants filed their answer the nuisance was probably abated and long ago entirely ceased when the defendant ceased to operate any plant within the limits of the Monmouth Beach tract. The form of the injunc-

tion, so far as it restrains a common law nuisance, will probably not give rise to dispute between counsel.

2. The only matter remaining for determination is whether at the time of the filing of the bill the complainants were entitled to an injunction restraining the defendant from operating their power plant for electric lighting on their lots situate within the limits of the Monmouth Beach tract. The test question is a very narrow one, viz., is or is not an electric light station with the usual equipment of boilers, engines and dynamos a manufactory within the meaning of the covenant and "scheme" which the complainants advance as the basis of this branch of their claim for relief? The covenant and scheme are all exhibited in the report of the case of *DeGray* v. *Monmouth Beach Club House, 50 N. J. Eq. (5 Dick.) 329.*

In my judgment, it is useless to go into speculative questions as to the nature of electricity or the nature of the product, if there be a product, of the electric plant which the defendant operated at the time of the filing of the bill. At different periods in the history of electrical discovery very different views have been entertained on this subject. At one time this plant might have been regarded as a manufactory of a "fluid." More recently it might be deemed to be turning out electrons or *ions*. All speculation is stopped, I think, by the recent decision of the court of errors and appeals in the case of *Bates Machine Co.* v. *Trenton and New Brunswick Railroad Co., 70 N. J. Law (41 Vr.) 684,* and the cases cited in the opinion of the court delivered by Mr. Justice Garrison. This recent decision seems to me to answer the question in regard to the character of the defendant's plant, which has been argued in this case in favor of the complainant. This electric light station with the necessary incidents attending its operation is, in my judgment, as clearly a manufactory within the meaning of this protective covenant as it is a manufactory within the meaning of the Mechanics' Lien law. If a distinction can be made in favor of the defendant in this case, I think that it should be left to the higher court to draw such distinction.

It may be conceded that when this covenant was framed and the Monmouth Beach "scheme" was promulgated about thirty-five years ago, the "manufacture" of electricity in electric light

stations was unknown. In view of the annoyance and discomforts which it was the intention of the scheme to exclude from this large residential district, no distinction can be drawn between manufacturing businesses which were in existence when the scheme was promulgated and manufacturing businesses which might thereafter come into existence.

It should be noted, I think, that no effort was made by the defendant to show that the electric lighting which the defendant proposed to effect by means of the operations carried on at its station lay wholly within the limits of the Monmouth Beach tract. The evidence, I think, indicated otherwise. However that may be, when the general character of the defendant's plant of boilers, engines and dynamos was proved, if any special and restricted use of the plant would alter its character within the purview of the covenant, it was incumbent upon the defendant to make proof of that fact.

3. Counsel for defendant at the argument endeavored to set up as a defence an alleged estoppel on the part of the complainants. It is sufficient to dispose of any such defence to point out that it is not set up or even suggested in the answer.

The complainants are entitled to costs.